**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT GREENEVILLE**

| | | |
|---|---|---|
| **JESSICA FOWLER-MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **NO:** _____ |
| | ) | **JURY TRIAL DEMANDED** |
| **TOWN OF BAILEYTON, TENNESSEE,** | ) | |
| **JOSHUA FERGUSON, individually,** | ) | |
| **and DALLAS MOORE, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Jessica Fowler-Moore files this Complaint against Defendants Town of Baileyton, Tennessee, Joshua Ferguson, individually, and Dallas Moore, individually, and states as follows:

## PARTIES

1. Plaintiff Jessica Fowler-Moore is an adult citizen and resident of Greene County, Tennessee.

2. Defendant Town of Baileyton, Tennessee is a municipal corporation located in Greene County, Tennessee.

3. Defendant Joshua Ferguson was, at all relevant times, a police officer for the Town of Baileyton. Defendant Ferguson is sued in his individual capacity. At all relevant times, Ferguson acted under color of state law.

4. Defendant Dallas Moore was, at all relevant times, a police officer for the Town of Baileyton. Defendant Moore is sued in his individual capacity. At all relevant times, Moore acted under color of state law.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings claims under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

6.     This Court has supplemental jurisdiction over Plaintiff's Tennessee-law claims under 28 U.S.C. § 1367.

7.     Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in Greene County, Tennessee, which lies within the Greeneville Division of the Eastern District of Tennessee.

## FACTUAL ALLEGATIONS

8.     On or about May 5, 2025, Defendant Ferguson initiated a traffic stop of a vehicle in which Plaintiff Jessica Moore and her young daughter were passengers.

9.     The driver of the vehicle did not immediately stop and continued driving for a short distance before voluntarily pulling into a parking lot and stopping.

10.    Plaintiff was not the driver of the vehicle.

11.    Plaintiff did not operate the vehicle, control the vehicle, direct the driver to continue driving, or otherwise cause the vehicle not to immediately stop.

12.    Dallas Moore was also present as a Baileyton police officer.

13.    While Ferguson was in the process of arresting the driver, Dallas Moore stood near Plaintiff and spoke with Plaintiff and her young daughter in a different area of the parking lot.

14.    Plaintiff was not violent, threatening, armed, or attempting to flee.

15.    Ferguson arrested the driver and placed him in the back of a patrol vehicle.

16. After placing the driver in the patrol vehicle, Ferguson left the immediate scene to look for a container of alcohol that had reportedly been thrown from the vehicle.

17. During Ferguson's absence, Dallas Moore remained near Plaintiff and continued to observe Plaintiff's demeanor and conduct.

18. Plaintiff did not attempt to flee, threaten anyone, assault anyone, interfere with the driver's arrest, or interfere with Ferguson's search for the container of alcohol.

19. Several minutes later, Ferguson returned to Plaintiff's location.

20. Ferguson then approached Plaintiff and asked, "What all have you had to drink today?"

21. Plaintiff responded that she had consumed a margarita.

22. Ferguson then asked Plaintiff, "Do you have an ID card?"

23. Plaintiff responded, "Not for you, no," or words to that effect while stating she had done nothing illegal. Plaintiff was a passenger and was not operating the vehicle.

24. Plaintiff's verbal refusal to provide identification did not constitute public intoxication, resisting arrest, child endangerment, or any other criminal offense.

25. Immediately after Plaintiff declined to provide Ferguson with an ID card, Ferguson told Plaintiff, "Okay, turn around," or words to that effect.

26. Plaintiff responded by stating that she had done nothing illegal and began slowly backing away toward her young daughter while continuing to hold her cell phone to attempt to record the encounter.

27. Ferguson began saying, "Do not run from me," or words to that effect.

28. Plaintiff was not running from Ferguson.

29. Ferguson reached out and grabbed Plaintiff's arm and violently jerked her

arm toward him.

30. Plaintiff was not using force against Ferguson, Dallas Moore, or anyone else.

31. Plaintiff was not attempting to strike, kick, push, bite, or injure anyone.

32. Plaintiff was not attempting to destroy evidence.

33. At this point, Ferguson lifted Plaintiff off the ground and body slammed her onto the concrete parking lot surface. The force of the impact was so severe that Ferguson's body-worn camera became dislodged from his vest.

34. After Ferguson slammed Plaintiff to the ground, Plaintiff continued trying to record the encounter with her cell phone.

35. Plaintiff remained on the ground, unarmed, nonviolent, and not posing an immediate threat. She was not attempting to escape from Ferguson.

36. At this point, Dallas Moore was close enough to Plaintiff to assist with handcuffing her and was leaning down with handcuffs in his hand. Before Dallas Moore placed handcuffs on Plaintiff, Ferguson pulled out a canister of pepper spray and motioned for Dallas Moore to back away.

37. Dallas Moore saw or had reason to know that Ferguson was about to deploy pepper spray against Plaintiff.

38. Dallas Moore had a reasonable opportunity and the means to intervene before Ferguson deployed pepper spray.

39. Dallas Moore could have verbally warned Ferguson not to spray Plaintiff, objected to the use of pepper spray, assisted with handcuffing Plaintiff without chemical force, or otherwise taken reasonable steps to prevent the unnecessary use of pepper

spray.

40. Dallas Moore did not intervene.

41. Ferguson then pepper sprayed Plaintiff directly into her eyes before handcuffing her.

42. Ferguson caused Plaintiff to be arrested and transported to jail.

43. Ferguson caused Plaintiff to be charged with public intoxication, resisting arrest, and child endangerment.

44. Plaintiff was booked into jail and remained subject to the criminal process until the charges were dismissed.

45. Upon information and belief, after legal process issued, Plaintiff was required to secure release from custody, comply with conditions of release, appear in court, and remain subject to the restrictions and burdens of the criminal prosecution until the charges were dismissed.

46. Ferguson lacked probable cause to arrest Plaintiff for any criminal offense, including public intoxication, resisting arrest, child endangerment, obstruction, failure to identify, or any other offense.

47. Plaintiff's statement that she had consumed a margarita did not establish that she was intoxicated to a degree that she endangered herself, endangered others or property, or unreasonably annoyed anyone in the vicinity.

48. Plaintiff's status as a passenger and her verbal refusal to produce identification did not establish probable cause for any offense.

49. Plaintiff's verbal refusal, act of backing away, and attempt to record the encounter did not establish probable cause for resisting arrest because Plaintiff did not

use force against Ferguson, Dallas Moore, or any other person.

50. Plaintiff's status as a passenger and mother of the child did not establish probable cause for child endangerment because Plaintiff did not operate the vehicle, control the vehicle, direct the driver to flee, know that the driver would flee, have the ability to control the driver's conduct, or knowingly expose her child to physical injury or imminent danger.

51. All criminal charges against Plaintiff arising from this incident were dismissed by nolle prosequi.

52. The criminal proceedings terminated in Plaintiff's favor and without conviction.

53. As a result of Defendants' conduct, Plaintiff suffered physical injuries, pain, emotional distress, humiliation, loss of liberty, damages associated with arrest and prosecution, and other damages to be proven at trial.

54. The Town of Baileyton was responsible for the hiring, retention, training, supervision, discipline, and control of its police officers, including Ferguson and Dallas Moore.

55. The Town was responsible for maintaining lawful policies and practices concerning arrests, use of force, use of pepper spray, passenger detentions, citizens recording police, officer intervention, police reporting, officer discipline, and citizen complaints.

56. Before the May 5, 2025 incident, Ferguson had served as Baileyton's Chief of Police.

57. In or around February 2025, the Town demoted Ferguson from Chief of

Police to police officer.

58. The demotion was based, at least in part, on allegations concerning insubordination, failure to perform or timely perform assigned duties, and numerous complaints from the public.

59. Ferguson appealed or challenged the demotion at a public meeting in March 2025, but the demotion was not overturned.

60. After demoting Ferguson, the Town permitted Ferguson to remain employed as a Baileyton police officer.

61. At the time of the incident involving Plaintiff, Baileyton had no active Chief of Police.

62. Despite having no active Chief of Police, the Town permitted Ferguson to continue exercising police authority, including the authority to patrol, detain citizens, arrest citizens, use force, deploy pepper spray, and initiate criminal charges.

63. At the time of the incident, Dallas Moore had been employed by the Town for less than two months. Dallas Moore and Ferguson were the only police officers employed by the Town.

64. Upon information and belief, Dallas Moore had recently completed the police academy and had limited practical law-enforcement experience.

65. The Town placed Ferguson, a recently demoted former police chief, and Dallas Moore, a newly hired officer, in positions where they were expected to conduct traffic stops, detain citizens, make arrests, use force, deploy pepper spray, and make real-time decisions about whether to intervene in another officer's use of force.

66. Upon information and belief, the Town failed to adequately train Ferguson

and Dallas Moore on the difference between active resistance and passive noncompliance.

67.     Upon information and belief, the Town failed to adequately train Ferguson and Dallas Moore on the lawful use of force against nonviolent passengers during traffic stops.

68.     Upon information and belief, the Town failed to adequately train Ferguson and Dallas Moore on the lawful use of pepper spray.

69.     Upon information and belief, the Town failed to adequately train Ferguson and Dallas Moore on an officer's duty to intervene to prevent excessive force.

70.     Upon information and belief, the Town failed to adequately train Ferguson on the elements of public intoxication, resisting arrest, and child endangerment.

71.     Upon information and belief, the Town failed to adequately supervise Ferguson despite prior notice that he required supervision, correction, discipline, restriction of authority, or removal from patrol duties.

72.     Upon information and belief, the Town failed to adequately supervise Dallas Moore despite his recent hiring, limited practical law-enforcement experience, and the absence of an active Chief of Police.

73.     Upon information and belief, the Town failed to adequately investigate, correct, or discipline unconstitutional seizures, excessive force, unlawful arrests, unsupported criminal charges, and failures to intervene.

74.     The Town's decision to leave a recently demoted former police chief – who had been demoted based on insubordination and numerous complaints from the public – with full police authority, while operating without an active Chief of Police and pairing him

with a newly hired officer with limited practical experience, reflected deliberate indifference to the constitutional rights of citizens with whom Baileyton officers would come into contact.

75. The Town's policies, customs, failures to train, failures to supervise, failures to discipline, deliberate indifference, ratification, and/or actions by final policymakers were the moving force behind Plaintiff's constitutional injuries.

## COUNT I: 42 U.S.C. § 1983 — Fourth Amendment Excessive Force Against Defendant Ferguson, Individually

76. Plaintiff incorporates the preceding paragraphs.

77. Ferguson seized Plaintiff within the meaning of the Fourth Amendment.

78. Ferguson used force against Plaintiff by grabbing her, body slamming her onto the concrete parking lot surface, and pepper spraying her in the eyes before handcuffing her.

79. Plaintiff was not suspected of a serious violent offense, did not pose an immediate threat, was not armed, was not actively resisting, and was not attempting to flee.

80. Ferguson's use of force was objectively unreasonable under the Fourth Amendment.

81. Ferguson violated Plaintiff's clearly established constitutional right to be free from excessive force.

82. Ferguson's conduct directly and proximately caused Plaintiff's injuries and damages.

## COUNT II: 42 U.S.C. § 1983 — Failure to Intervene Against Defendant Dallas Moore, Individually

83. Plaintiff incorporates the preceding paragraphs.

84. Dallas Moore was present during Ferguson's use of force against Plaintiff.

85. Dallas Moore observed or had reason to know that Ferguson would use or was using excessive force against Plaintiff.

86. Dallas Moore knew or had reason to know that Plaintiff was on the ground, unarmed, nonviolent, not attempting to flee, and not posing an immediate threat.

87. Before Ferguson deployed pepper spray, Ferguson motioned Dallas Moore to back up while Ferguson was pulling out his pepper spray.

88. Dallas Moore had a reasonable opportunity and the means to prevent Ferguson from pepper spraying Plaintiff.

89. Dallas Moore failed to take reasonable steps to intervene.

90. Dallas Moore's failure to intervene violated Plaintiff's clearly established Fourth Amendment rights.

91. Dallas Moore's conduct directly and proximately caused Plaintiff's injuries and damages.

## COUNT III: 42 U.S.C. § 1983 — Fourth Amendment Unlawful Arrest Against Ferguson, Individually

92. Plaintiff incorporates the preceding paragraphs.

93. Ferguson arrested Plaintiff and caused her to be detained.

94. At the time Ferguson arrested Plaintiff, the facts known to Ferguson did not establish probable cause to believe Plaintiff had committed public intoxication, resisting arrest, child endangerment, obstruction, failure to identify, or any other criminal offense.

95. Plaintiff's statement that she had consumed a margarita did not establish that she was intoxicated to a degree that she endangered herself, endangered others or property, or unreasonably annoyed anyone in the vicinity.

96. Plaintiff's verbal refusal to produce identification did not establish probable cause because Plaintiff was a passenger and was not operating the vehicle.

97. Plaintiff's verbal refusal, act of backing away, and attempt to record the encounter did not establish probable cause for resisting arrest because Plaintiff did not use force against Ferguson, Dallas Moore, or any other person.

98. Plaintiff's status as a passenger and mother of the child did not establish probable cause for child endangerment because Plaintiff did not operate the vehicle, control the vehicle, direct the driver to flee, know that the driver would flee, or knowingly expose her child to physical injury or imminent danger.

99. Ferguson's arrest of Plaintiff was unreasonable under the Fourth Amendment.

100. Ferguson violated Plaintiff's clearly established right to be free from arrest without probable cause.

101. Ferguson's conduct directly and proximately caused Plaintiff's injuries and damages.

**COUNT IV: 42 U.S.C. § 1983 — Fourth Amendment Malicious Prosecution Against Defendant Ferguson, Individually**

102. Plaintiff incorporates the preceding paragraphs.

103. Ferguson made, influenced, or participated in the decision to prosecute Plaintiff.

104. Ferguson caused Plaintiff to be charged with public intoxication, resisting

arrest, and child endangerment.

105. Ferguson lacked probable cause to cause those charges to be initiated or continued.

106. Ferguson's statements, omissions, incident narrative, and charging allegations were material to the initiation and continuation of the criminal proceedings.

107. As a result of the criminal proceedings and legal process, Plaintiff suffered a deprivation of liberty apart from the initial seizure, including being booked into jail, being required to secure release from custody, being subject to conditions of release, being required to appear in court, and remaining subject to criminal process until the charges were dismissed.

108. The criminal proceedings terminated in Plaintiff's favor by nolle prosequi and without conviction.

109. Ferguson's conduct violated Plaintiff's clearly established Fourth Amendment rights.

110. Ferguson's conduct directly and proximately caused Plaintiff's injuries and damages.

### COUNT V: 42 U.S.C. § 1983 – Municipal Liability Against Defendant Town of Baileyton

111. Plaintiff incorporates the preceding paragraphs.

112. Defendant Town of Baileyton is a municipality subject to suit under 42 U.S.C. § 1983.

113. Plaintiff suffered violations of her Fourth Amendment rights.

114. The Town is liable because Plaintiff's constitutional injuries were caused by the Town's official written arrest policy, customs, failures to train, failures to supervise,

failures to discipline, deliberate indifference, ratification, and/or decisions by officials with final policymaking authority.

115. The Town maintained an official written arrest policy in Baileyton Municipal Code § 6-103. That ordinance provides that, unless otherwise authorized or directed by the code or other applicable law, "an arrest of the person shall be made by a police officer" in several circumstances, including when a person "refuses to provide identification" to a police officer.

116. As written, interpreted, applied, and/or taught, that policy caused or encouraged officers to treat refusal to provide identification as an independent basis for arrest, even when the officer lacked probable cause that the person had committed an offense.

117. Ferguson acted consistently with that policy when he arrested Plaintiff immediately after she declined to provide identification.

118. The policy was unconstitutional as applied to Plaintiff because Plaintiff was a passenger, was not operating the vehicle, was not being cited for a municipal ordinance violation, and had committed no offense for which refusal to provide identification supplied probable cause.

119. Alternatively, if the Town contends that Baileyton Municipal Code § 6-103 does not authorize arrest merely for refusing to provide identification, then the Town failed to train, supervise, and control Ferguson regarding the lawful limits of that ordinance.

120. Before the incident, the Town had notice that Ferguson had been demoted from Chief of Police to police officer based on serious employment and performance concerns, including insubordination and numerous complaints from the public.

121. Upon information and belief, the complaints and performance concerns that led to Ferguson's demotion included issues relevant to his judgment, compliance with directives, citizen interactions, exercise of police authority, and fitness to continue performing patrol duties without close supervision.

122. Despite that notice, the Town permitted Ferguson to continue exercising full police authority without adequate supervision, remedial training, discipline, restriction of authority, or removal from patrol duties.

123. At the time of the incident, the Town had no active Chief of Police and failed to provide adequate supervision over Ferguson and Dallas Moore.

124. The Town also failed to train, supervise, and control Dallas Moore despite his limited practical law-enforcement experience and the known or obvious need for officers to understand their duty to intervene to prevent excessive force.

125. The Town's written policy, customs, failures to train, failures to supervise, failures to discipline, deliberate indifference, and ratification were moving forces behind Plaintiff's constitutional injuries.

126. The Town's written arrest policy, customs, failures to train, failures to supervise, failures to discipline, deliberate indifference, and ratification were moving forces behind Plaintiff's constitutional injuries.

127. The Town's conduct directly and proximately caused Plaintiff's injuries and damages.

## DAMAGES

128. Plaintiff suffered damages including physical injury, pain and suffering, emotional distress, humiliation, embarrassment, fear, anxiety, loss of liberty, loss of

enjoyment of life, medical expenses, damages associated with arrest and prosecution, reputational harm, inconvenience, and other damages to be proven at trial.

129. Plaintiff is entitled to compensatory damages against Defendants.

130. Plaintiff is entitled to punitive damages against Defendants Ferguson and Dallas Moore individually.

131. Plaintiff is entitled to attorney's fees, costs, and expenses under 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff Jessica Fowler-Moore respectfully requests that judgment be entered in her favor and against Defendants Town of Baileyton, Tennessee, Joshua Ferguson, individually, and Dallas Moore, individually, as follows:

1. That process issue and Defendants be required to answer;
2. That Plaintiff be awarded compensatory damages in an amount to be determined by the jury;
3. That Plaintiff be awarded punitive damages against Defendants Joshua Ferguson and Dallas Moore individually;
4. That Plaintiff be awarded reasonable attorney's fees, costs, and litigation expenses under 42 U.S.C. § 1988;
5. That Plaintiff be awarded discretionary costs where allowed by law;
6. That a jury be empaneled to try issues so triable;
7. That Plaintiff be awarded all further relief to which she may be entitled.

Respectfully submitted,

/s/ T. Dillon Parker
Denise S. Terry, BPR # 012478
T. Dillon Parker, BPR #037073
THE TERRY LAW FIRM
116 East Main Street
P.O. Box 724
Morristown, TN 37815-0724
423-586-5800 /Fax 423-587-4714
Email: denise@terry-lawfirm.com
dillon@terry-lawfirm.com